UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRAUSZ INDUSTRIES, LTD.,
formerly known as
Krausz Metal Industries, Ltd.,

                              Plaintiff,

                                                                                           DECISION AND ORDER

                                                                                           09-CV-6300L

                              v.

ROMAC INDUSTRIES, INC.,
EVERETT J. PRESCOTT, INC.,

                              Defendants.
_____

       Plaintiff Krausz Industries, Ltd. ("Krausz") brings this action against defendant Romac Industries, Ltd. ("Romac"), and Everett J. Prescott, Inc. ("Prescott"), a distributor of both Krausz and Romac products, pursuant to the Patent Act, 35 U.S.C. §1 et seq. Krausz claims that the "Macro" coupling, a pipe coupling device marketed and sold by the defendants, infringes on two of its patents.

## FACTUAL BACKGROUND

       Krausz, an Israeli company based in Tel Aviv, is engaged in the manufacture and sale of pipe joining and repair devices. Eliezer Krausz is the inventor of two water pipe couplings, allegedly protected by U.S. Patent Nos. 6,293,556 and 7,243,955 (referred to as the "'566" and

"'955" patents, respectively). Krausz employs an exclusive United States Distributor, Total Piping Solutions ("TPS"), headquartered in this district, to market its products in the United States.

On July 10, 2009, Krausz filed this action alleging that Romac, a manufacturer and seller of water pipe products for the waterworks industry, was selling a water pipe coupling (known as the "Macro coupling") that infringes on the '566 and '955 patents. On July 21, 2009, Romac moved to dismiss the action or, in the alternative, to transfer it to the Western District of Washington, where its own headquarters are located.

In an apparent attempt to defeat Romac's motion to transfer venue based on the lack of contacts with this District, Krausz responded by filing a Second Amended Complaint. In the Second Amended Complaint, Krausz adds Prescott – one of its own distributors – as a codefendant, solely on the grounds that Prescott also serves as a distributor of Romac products.

Romac is located in Seattle, Washington and has no direct contacts with the Western District of New York. This case's sole connections to this District are: (1) Krausz's United States distributor, TPS, has regional offices here, and TPS employees first brought the alleged infringement to Krausz's attention; (2) Krausz and Romac distributor Prescott has its headquarters here; and (3) Romac sells products throughout the United States, including in the Western District of New York, which accounts for approximately $500,000 of Romac's annual revenue (less than 1% of Romac's total sales per year).

**Discussion**

I.  **Defendant Romac's Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)**

Romac moved to dismiss the initial complaint, on the basis that Krausz had failed to allege that every element of the patented device is present in the accused device, either literally or under the doctrine of equivalents. *See Lemelson v. U.S.*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). Specifically, Romac alleges that Krausz's complaint failed to set forth a cause of action for patent infringement, because it: (1) did not allege any facts detailing the elements of the '566 and '955 patents that are being infringed upon; (2) did not specify the limitations of the asserted claims; and (3) provided no facts about the Macro coupling that would enable the reader to determine which limitations of which claims in the '556 and/or '955 patents are present in Romac's Macro coupling.

After Romac's motion to dismiss was filed, Krausz amended the complaint. The operative pleading is now the Second Amended Complaint, which is more than double the length of the original complaint and appears to correct the deficiencies identified by Krausz in its motion to dismiss. Specifically, the Second Amended Complaint details each of the claims and limitations of both patents, and specifies which limitations of which claims in both patents are present in Romac's Macro coupling. (Dkt. #36, ¶¶9-33). Although Romac filed a supplemental memorandum of law in support of its motion to transfer after the Second Amended Complaint was filed, it has not renewed its arguments in support of its motion to dismiss the complaint,

apparently conceding that the Second Amended Complaint does not suffer from the same deficiencies as the original complaint. Accordingly, Romac's motion to dismiss is denied.

In its motion to dismiss, Romac also contended that Krausz failed to comply with its obligation to conduct a "reasonable pre-filing inquiry" prior to bringing suit, and should be sanctioned. *See View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (before bringing suit, a party should, "at a bare minimum, apply the claims of each and every patent that is being brought in to the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.")

Krausz, however, denies that it failed to meet its Rule 11 pre-filing investigation obligation, and alleges that prior to filing the complaint, it viewed, physically inspected and photographed Romac's "Macro" coupling, analyzed technical drawings and specifications provided in Romac's Macro brochure, and discussed and evaluated this information with TPS representatives. On the record before me, it would appear that Krausz performed, at least minimally, "a good faith, informed comparison of the claims of [its] patent against the accused subject matter." *See Q-Pharma*, *Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004) (describing the type of "infringement analysis" required by the pre-filing inquiry requirement). Romac's request for sanctions is therefore denied.

**II.     Romac's Motion to Transfer Venue**

In the event that the motion to dismiss is denied, Romac requests that the action be transferred to the Western District of Washington pursuant to 28 U.S.C. §1404(a), in the interest of justice and to serve the convenience of parties and witnesses.

In ruling upon a motion to transfer, the Court must consider both the interests of the parties, and the public interest. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The parties' interest includes: (1) the deference due to the plaintiff's chosen forum; (2) the convenience of the parties and witnesses; (3) the relative ease of access to evidence and other sources of proof; (4) the availability of compulsory process to secure the attendance of witnesses; (5) the location of documents and other tangible evidence; (6) issues relating to the enforcement of any judgment obtained; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*, *quoting Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 966-967 (2d Cir. 1980). The public interest includes the administrative challenges posed by congested court calendars, the interest in having controversies decided locally, and, in diversity cases, the interest in trying state-law matters in the state from which the governing law derives. *Gulf Oil Corp.*, 330 U.S. 501 at 508-509; *O'Brien*, 812 F. Supp. 383 at 386. "The plaintiff's choice of forum is entitled to considerable weight, and should not be disturbed unless the balance of [the relevant] factors is strongly in favor of the defendant." *O'Brien*, 812 F. Supp. 383 at 386.

In considering these factors, the Court notes initially that the majority of the relevant witnesses and documents are located at or near Romac's headquarters in the Western District of Washington. Romac's primary designers of the Macro coupling, as well as its corporate witnesses and lead counsel, reside in the Seattle area. Romac's records relating to the development of the Macro coupling are also located there. Although co-defendant Prescott is a resident of New York and not otherwise subject to the jurisdiction of the Western District of Washington, Prescott has submitted an affidavit by its president, Steven Prescott, explicitly

consenting to personal jurisdiction and venue in the state of Washington in the event the matter is transferred there. (Dkt. #35-1, Exh. A).

Krausz argues that some of its potential witnesses – employees of TPS's regional office in Olean, New York – reside in this district and may be required to testify at trial concerning the comparative operation and marketing of the Krausz and Romac couplings at issue. Such potential testimony, however, is of lesser importance than Romac's fact witnesses located in Washington, who are expected to testify specifically about the development of the allegedly infringing product. Moreover, the New York-based witnesses are by no means Krausz's only conduit for introducing testimony about its couplings at trial. Assuming *arguendo* that testimony from Krausz and Romac distributors is vital to the case, if the TPS witnesses were unavailable or unwilling to travel to Washington, identical testimony concerning the marketing, operation and distribution of the relevant Krausz and Romac couplings could be given by any of a number of distributors of Krausz and Romac products nationwide, including the Frank J. Martin Company ("Martin"), a TPS distributor located in the Western District of Washington. (Dkt. #35-1, Exh. B).

Krausz argues that transferring venue to Washington would also be less convenient for its own principal witness, '556 patent inventor and co-inventor of the '955 patent, Eliezer Krausz. Mr. Krausz resides in Tel Aviv and is 85 years old, allegedly in poor health, and unable to travel alone. Plaintiff alleges that there are 40 direct flights between Tel-Aviv and Buffalo, New York every week, while there are no direct flights to Washington State, that it takes an additional 6-7 hours to travel to Seattle, and that the time difference between Tel Aviv and Seattle is 3 hours greater than with New York.

While the Court is sympathetic to Mr. Krausz's travel constraints, plaintiff appears to overestimate the relative convenience of flights to and from the relevant locations, and completely ignores the significant travel burden that would be imposed on the primary defendant. At least one change – to another plane, or to another form of transportation – would be required for Mr. Krausz, regardless of whether the action is venued here in Rochester, New York, or in Washington. Given that flights from Tel Aviv to the United States require more than half a day's investment and a time change adjustment of at least seven hours in any event, a difference of two or three hours, either in travel or in time zone, is not particularly significant.[1] In contrast, all of Romac's principals and witnesses are located in Washington, and would have to travel seven hours from their present location in the event the action remains here, compared with virtually no travel if the action were venued in Romac's home district.

The gravamen and core of this action is a claim that Romac, operating from its headquarters in Seattle, Washington, committed patent infringement by developing, manufacturing, marketing and selling a product which infringed on plaintiff's patents. None of the operative events, outside the bare distribution of the allegedly-infringing product by a single New York-based distributor – one of a large network of distributors nationwide – is alleged to have occurred in this District. It is manifest that the bulk of relevant events, witnesses and documents is located in the Western District of Washington. The extent of that district's contacts

---

[1] According to widely-used online booking services, an overnight flight from Tel Aviv to Rochester, NY with a single plane change is estimated to require fourteen or fifteen hours of time in air, plus wait time between flights. An overnight flight from Tel Aviv to Seattle, Washington with a single plane change is estimated at about seventeen hours, plus wait time. *See generally* http://www.orbitz.com (comparing flights between TLV and ROC, and TLV and SEA); http://www.travelocity.com (same). Flights between Seattle to Rochester with one plane change require about seven hours of time in air. *Id*.

with this case – along with the relative paucity of contacts with this District, the relatively small difference in added inconvenience to plaintiff, and the enormous added convenience for defendant Romac – strongly favors transfer of the matter to the Western District of Washington, in the interests of justice, and the overall convenience of the parties and witnesses.  *See Wakaya Ltd. v. Case*, 1990 U.S. Dist. LEXIS 12351 at *6-*10 (S.D.N.Y. 1990)(transferring venue where the primary connection to plaintiff's chosen venue is several nonparty witnesses whose testimony is relatively unimportant).

## CONCLUSION

Upon review of the relevant factors, I find that a transfer of venue is appropriate. Defendant Romac's motion to dismiss and/or transfer venue (Dkt. #14) is hereby granted in part, and the action is transferred to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. §1404.  To the extent defendant's motion seeks dismissal of plaintiff's claims, the motion is denied, and defendant's request for sanctions is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
　　　　June 30, 2010.